# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JESSICA R. LOPEZ,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | **SA-07-CV-0918 XR (NN)** |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:**   **Honorable Xavier Rodriguez**
      **United States District Judge**

### Introduction

Plaintiff Jessica Lopez brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Lopez is not disabled for the purposes of the Social Security Act (the Act) and denying Lopez's applications for Disability Income Benefits (DIB) and Supplemental Social Security Insurance (SSI) benefits.  Lopez asks the district court to reverse the Commissioner's decision and to render judgment in her favor.  In the alternative, Lopez asks the district court to reverse the decision and remand the case for further proceedings.

After considering Lopez's brief in support of her complaint,[1] the brief in support of the

---

[1]Docket entry # 23.

Commissioner's decision,[2] the record of the SSA proceedings, the pleadings on file, the

applicable case authority and relevant statutory and regulatory provisions, and the entire record in

this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C.

§ 636(b) and this district's general order, dated July 17, 1981, referring for disposition by

recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the

plaintiff's application for benefits.[3]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as

provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

The record is not clear about when Lopez applied for disability benefits, but there does

not appear to be any question that Lopez exhausted her administrative remedies prior to filing

this action in federal court.  The record includes references to applications filed on  June 2,

2003,[4] August 12, 2003,[5] December 16, 2003,[6] and January 6, 2004,[7] all alleging disability

beginning July 11, 1997.  The alleged onset date is the day Lopez had surgery on her right wrist

_____

[2]Docket entry # 25.

[3]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[4]SSA record, p. 404.

[5]*Id*. at p. 401.

[6]*Id*. at pp. 110 & 412.

[7]*Id*. at p. 29.

and right shoulder.[8]  The Commissioner denied Lopez's applications initially and on

reconsideration.[9]  Lopez asked for a hearing before an ALJ.[10]  A hearing was held on November

21, 2005.[11]  The ALJ issued a decision on March 20, 2006, concluding that Lopez is not disabled

within the meaning of the Act.[12]  Lopez asked for review of the decision.  The Appeals Council

remanded the case to the ALJ to further evaluate Lopez's subjective complaints about pain and

provide rationale in accordance with the SSA's regulations pertaining to the evaluation of

symptoms.[13]  The ALJ conducted a second hearing on January 11, 2007,[14] and issued a second

decision on March 22, 2007, again concluding that Lopez was not disabled within the meaning of

the Act.[15]  Lopez asked the Appeals to review the decision.[16]  After giving Lopez time to submit

additional evidence,[17] the Appeals Council denied Lopez's request for review.[18] The ALJ's

second decision became the final decision of the Commissioner for the purpose of the district

---

[8]*Id*. at p. 214-17.

[9]*Id*. at pp. 29-30, 404 & 415.

[10]*Id*. at p. 56.

[11]*Id*. at pp. 470-511.

[12]*Id*. at pp. 31-41.

[13]*Id*. at p. 89.

[14]*Id*. at pp. 512-57.

[15]*Id*. at pp. 19-26.

[16]*Id*. at p. 13.

[17]*Id*. at p. 11.

[18]Id. at p. 7.

court's review pursuant to 42 U.S.C. § 405(g).  Lopez filed this action seeking review of the

Commissioner's decision on November 7, 2007.[19]

### Issue Presented

> Is the ALJ's decision that Lopez is not under a "disability," as
> defined by the Act, supported by substantial evidence and does the
> decision comport with relevant legal standards?

### Analysis

#### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court

is limited to determining whether substantial evidence supports the decision and whether the

Commissioner applied the proper legal standards in evaluating the evidence.[20]  "Substantial

evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."[21]  Substantial evidence

"must do more than create a suspicion of the existence of the fact to be established, but 'no

substantial evidence' will be found only where there is a 'conspicuous absence of credible

choices' or 'no contrary medical evidence.'"[22]

If the Commissioner's findings are supported by substantial evidence, then they are

---

[19]Docket entry # 1.

[20]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[21]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[22]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

conclusive and must be affirmed.[23]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[24]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[25]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[26]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[27]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[28]  A claimant shall be determined to be disabled only if her physical or

---

[23]*Martinez*, 64 F.3d at 173.

[24]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[25]*Martinez*, 64 F.3d at 174.

[26]*Id*.

[27]42 U.S.C. § 1382(a)(1) & (2).

[28]42 U.S.C. § 1382c(a)(3)(A).

mental impairment or impairments are so severe that he is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[29]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[30]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[31]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[32]  If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[33]  The second step involves determining whether the claimant's impairment is severe.[34]  If it is not severe, the claimant is deemed not disabled.[35]  In the third step, the Commissioner compares the severe impairment with

---

[29]42 U.S.C. § 1382c(a)(3)(B).

[30]20 C.F.R. §§ 404.1520 and 416.920.

[31]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[32]20 C.F.R. §§ 404.1520 and 416.920.

[33]*Id.*

[34]*Id.*

[35]*Id.*

those on a list of specific impairments.[36]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[37]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of her past work.[38]  If the claimant is still able to do her past work, the claimant is not disabled.[39]  If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[40]  If the claimant cannot do other work, he will be found disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[41]  Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[42]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[43]

---

[36]*Id.*

[37]*Id.*

[38]*Id.*

[39]*Id.*

[40]*Id.*

[41]*Leggett*, 67 F.3d at 564.

[42]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[43]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step four of the evaluation process.  At step one, the ALJ determined that Lopez hasn't engaged in any substantial gainful activity since her alleged onset date.[44]  At step two, the ALJ determined that Lopez has the following severe impairments: carpal tunnel syndrome and right shoulder pain, status post surgery.[45]  At step three, the ALJ determined that these impairments, either singly or in combination, are not severe enough to meet, medically equal or functionally equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1).[46]  At step four, the ALJ determined that Lopez has the residual functional capacity to do work at the light exertion level with the following limitations: Lopez can lift and carry 10 pounds occasionally and 5 pounds frequently; sit, stand, and walk at least six hours out of an eight-hour workday; reach overhead and finger with the right upper extremity occasionally; and no climbing ropes, ladders, or scaffolds.[47]  After conferring with a vocational expert, the ALJ determined that Lopez can perform her past relevant work as a courier[48]—work she performed after her alleged onset date—and concluded that Lopez is not disabled.[49]

---

[44]SSA record, p. 21.

[45]*Id*.

[46]*Id*.

[47]*Id*. at p. 22.

[48]*Id*. at p. 25.

[49]*Id*. at p. 26.

## C.  Lopez's Allegations of Error

Lopez alleged disability based on pain in her right shoulder, right elbow and right wrist.[50] Lopez's problems with her right upper extremity began in 1993 when Lopez injured her right shoulder while working for AutoZone.  The injury was compensable under Texas workers' compensation law.  The record doesn't include any treatment records for the 1993 injury, but numerous documents in the record refer to the injury.  The first medical evidence of treatment on Lopez's upper extremity is the operative report for surgery on Lopez's right wrist and right shoulder on June 11, 1997.[51]  After the surgery, Lopez continued to complain about pain in her right wrist and shoulder—the pain she alleges prevents her from working.  Despite her allegation, Lopez worked as a courier in 1999, earning the same amount of money that she earned in 1997. She testified that she worked seven days a week for 8 to 10 hours per day.[52]  In addition, she has cared for nine children[53]—three of the children were born since the June 11, 1997 surgery.

Since the surgery, Lopez has undergone manipulation of right shoulder under anesthesia and incidental manipulation of the wrist on November 3, 1997,[54] right shoulder arthroscopy[55]

---

[50]*Id*. at. p. 523.

[51]*Id*. at pp. 214-17.

[52]*Id*. at p. 477.

[53]*Id*. at p. 478.

[54]*Id*. at p. 238.

[55]"Examination of the interior of a joint by means of an endoscope or arthroscope."  J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. 1-A 11027 (Matthew Bender 2005).

with arthroscopic electrothermal capsulorrhaphy on January 4, 2000,[56] a carpal tunnel release[57] on

the right wrist some time before April 9, 2006,[58] a second shoulder surgery on September 19,

2006,[59] and a third surgical procedure on the right shoulder on February 28, 2007.[60]  Considering

these procedures, the Commissioner does not dispute that Lopez has experienced pain, and

continues to experience pain, in her right wrist and shoulder.  What is disputed is whether pain

prevents Lopez from working.

Lopez asserts that her ongoing treatment under workers' compensation insurance

indicates that she is disabled and unable to work.[61]  "[E]ven if [Lopez] was disabled for workers'

compensation purposes, that fact would not be binding on the Commissioner [because]

[d]ifferent agencies apply different standards and the Commissioner is required to make an

independent determination based on social security law."[62]  What constitutes disabled under

Texas workers' compensation laws is different from what constitutes disabled under the Act.  To

be disabled under Texas workers' compensation law, an employee must be unable "because of a

---

[56]SSA record, p. 250-51.

[57]"Surgical treatment of carpal tunnel syndrome, with incision into the transverse carpal ligament to relieve pressure on the median nerve." J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. 1-C 2062 (Matthew Bender 2005).

[58]SSA record, p. 360.

[59]*Id*. at pp. 350-51.

[60]*Id*. at p. 434.  According to the operative report, the surgeon performed a modified Mumford procedure and freshened up the edge of the clavicle.  *Id.*

[61]Docket entry # 23, p. 6.

[62]*Martinez v. Astrue*, 252 Fed. App'x 585, 587 (5th Cir. 2007).  *See Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990) ("[A] disability finding by the VA or any other governmental or nongovernmental agency is not binding on the Secretary.").

compensable injury to obtain and retain employment at wages equivalent to the preinjury wage."[63]  The Texas Workers' Compensation Work Status Report, dated January 23, 2007,[64] stated that Lopez's compensable injury—right shoulder and right elbow—still prevents Lopez from returning to work,[65] but it does not address the relevant question in a SSA case—whether Lopez is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  Lopez testified that before she was injured, her job at AutoZone required her to pull merchandise weighing from 30 to 40 pounds from slots, put the merchandise on totes and boxes, and pull the merchandise using jacks.[66]  The vocational expert characterized that job as medium exertion, requiring lifting up to 50 pounds.[67]  The ALJ determined that Lopez can no longer lift up to 50 pounds.  The ALJ determined that Lopez can perform work requiring light exertion, with the further limitation that Lopez can lift and carry 10 pounds occasionally and 5 pounds frequently.[68]  The ALJ incorporated that limitation—as well as "no frequent right upper extremity reaching and no fine fingering or keyboarding continuously or frequently with right upper extremity"[69]—into his hypothetical question to the vocational

---

[63]Tex. Lab. Code § 401.011(16) (Vernon Supp. 2007).

[64]SSA record, p. 339.

[65]*Id*. at p. 399.

[66]*Id*. at p. 501.

[67]*Id*. at 502.

[68]*Id*. at p. 22.

[69]*Id*. at p. 553.

expert.[70]  The vocational expert testified that a person with Lopez's limitations can perform work as a courier.[71]  Because that testimony supports the ALJ's determination that Lopez can perform her past relevant work as a courier, the ALJ correctly concluded at step four that Lopez is not disabled, despite Lopez's workers' compensation case.

Lopez also maintains that her impairments meet listing 12.07 of Appendix 1—either by itself or in combination with section 1.02 and 12.02—because she has had range-of-motion limitations in her right arm since 1999.  Section 12.07 applies to "somatoform disorders"—"[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms."  Lopez does not explain why her right-upper-extremity impairment meets this listing, but the medical expert testified that it does not meet the listing. No treating physician has opined that Lopez's impairment meets section 12.07.  In order for an impairment to meet the listing, the following criteria must be satisfied:

> A. Medically documented by evidence of one of the following:
>> 1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or
>> 2. Persistent nonorganic disturbance of one of the following:
>> * * *
>
>> d. Use of a limb; or
> AND
> B. Resulting in at least two of the following:
>> 1. Marked restriction of activities of daily living; or
>> 2. Marked difficulties in maintaining social functioning; or
>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>> 4. Repeated episodes of decompensation, each of extended duration.

---

[70]*Id*. at p. 552.

[71]*Id*. at pp. 553 & 555.

Lopez doesn't satisfy the subsection (A)(1) criteria because there is no evidence that Lopez's shoulder was impaired before age 30.  Lopez doesn't satisfy the subsection (B) criteria because there is no evidence that Lopez's activities of daily living are markedly restricted.  Lopez described a fairly active life of taking care of her home and her children, including hanging laundry, driving children to school, caring for a toddler, cleaning the house, and cooking for the family.[72]  In addition, there is no evidence that Lopez has marked difficulty in social functioning.  Lopez indicated that she visits friends and relatives twice a week for about five hours and that she makes her visits alone.[73]  After the hearing, Lopez presented evidence that she has no social life and has no interest in the things she used to do,[74] but that evidence is immaterial to the Commissioner's decision because it does not relate to the time period for which benefits were denied.[75]  There is no evidence of marked difficulties in maintaining concentration, persistence, or pace.  The record indicates that Lopez has to rest periodically when cleaning the house, but resting periodically does not rise to the level of a marked limitation.  There is no evidence of repeated episodes of decompensation.  Even considered in combination with section 1.02, Lopez's right-upper-extremity impairment does not meet a listing.  Section 1.02—major dysfunction of a joint—requires a gross anatomical deformity and the inability to perform fine

---

[72]*Id*. at pp. 479, 523-24.

[73]*Id*. at p. 163.

[74]Docket entry # 23, exh. A.

[75]*See Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

and gross movements effectively.[76]  Neither is implicated in Lopez's case.  Considered in

combination with section 12.02—organic mental disorders—Lopez's right-upper-extremity does

meet a listing because there is no evidence of psychological or behavioral abnormalities

associated with a dysfunction of the brain.

      Lopez's real complaint seems to be her disagreement with the ALJ's assessment of her

credibility about the impact of shoulder and wrist pain on her ability to work.  The ALJ found

that Lopez's pain is not disabling because it was unreasonable to conclude that the minimal

medical findings could serve as the basis for the alleged degree of pain.[77]  The ALJ followed the

SSA regulations in making this finding.  The ALJ recited the applicable process in his opinion[78]

and followed the process.  The following excerpt from the ALJ's opinion demonstrates that the

ALJ made a proper assessment:

---

[76]The criteria for section 1.02 follow:

    1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by gross
    anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis,
    instability) and chronic joint pain and stiffness with signs of limitation of motion or
    other abnormal motion of the affected joint(s), and findings on appropriate medically
    acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the
    affected joint(s). With:

    A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or
    ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

    or

    B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder,
    elbow, or wrist-hand), resulting in inability to perform fine and gross movements
    effectively, as defined in 1.00B2c.

[77]SSA record, p. 25.

[78]Id. at pp. 22-23.

The objective medical evidence does not indicate [Lopez] has such severe pain and restrictions on her physical activities that would prevent all work activities. As reflected in the claimant's testimony, her activities of daily living are not restricted in any significant manner.  She spends her day getting her children up and ready for school, driving them to school, cooking, cleaning the house and doing laundry.  At times, she will pick the children up from school.  She does the grocery shopping but her husband and daughter bring in the groceries.  She stated that she does get relief from her medications [and] she alleged no side effects from her medications.  The claimant has a 4-year-old child at home and twin 7-year-olds that are attending school.

As for the opinion evidence, no physician has expressed to the opinion that the claimant is disabled, unable to work, or a similar expression.[79]

Substantial evidence supports this finding.

Substantial evidence supports the ALJ's conclusion that Lopez can do a range of light work; specifically, the following evidence: (1) residual functional capacity assessment by Dr. Kevin A. Samaratunga, dated October 8, 2003, opining that Lopez can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk (with normal breaks) for a total of about six hours in an 8-hour day, sit (with normal breaks) about 6 hours in an 8-hour day, with limitation in right shoulder;[80] (2) report of examination by Dr. Marcos A. Iglesias, dated February 19, 2004, reporting decreased grip strength on right side, pain with abduction and flexion of the right shoulder, no clear etiology for right shoulder pain, Lopez can sit, stand, walk and move about without assistance, and Lopez can reach with her hands without pain;[81] (3) residual functional capacity assessment by Dr. James Wright, dated February 24, 2004, determining that Lopez can lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk

---

[79]*Id*. at p. 25.

[80]*Id*. at pp. 282-89.

[81]*Id*. at pp. 298-303.

15

(with normal breaks) for a total of about six hours in an 8-hour day, sit (with normal breaks) about 6 hours in an 8-hour day, reach occasionally with right arm, finger occasionally with right arm, and constantly handle and feel with both arms;[82] and (4) physician peer review by Dr. Ira Posner, dated April 20, 2005, reviewing Dr. Ali Mohamed's treatment recommendations and agreeing that Lopez's problems are attributable to the compensable injury and that Lopez requires minimal amount of medication to control her symptoms.[83]  The ALJ made no error of law.

### Recommendation

Because the ALJ made no error of law and because substantial evidence supports the ALJ's determinations, I recommend DENYING Lopez's request for relief (docket entry # 1) and AFFIRMING the Commissioner's decision.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[84]  **Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.**   A party filing objections must

---

[82]*Id*. at pp. 290-97.

[83]*Id*. at pp. 341-43.

[84]28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[85]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.

**SIGNED** on August 15, 2008.


*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[85] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

17